569 So.2d 1050 (1990)
Paul FUSILIER, Plaintiff-Appellant,
v.
LIBERTY RICE MILL, INC. et al., Defendants-Appellees.
No. 89-586.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
*1052 Steven A. Chandler, Lafayette, for plaintiff-appellant.
Roy, Carmouche, Bivins, Judice, Henke & Breaud, Kenneth Henke, Lafayette, for defendants-appellees.
Before FORET, DOUCET and KNOLL, JJ.
KNOLL, Judge.
This is a worker's compensation case. Plaintiff, Paul Fusilier, appeals an adverse decision of the trial court finding no disability and granting a judgment in favor of defendants, Liberty Rice Mill (Liberty) and its insurer, American Mutual Liability Insurance Company (American). Fusilier contends the trial court erred in: 1) not concluding that he was temporarily and totally disabled when worker's compensation payments were stopped; 2) not finding that he was entitled to rehabilitation services pursuant to LSA-R.S. 23:1226; 3) concluding that the defendants proved by a preponderance of the evidence that his condition of disability had ceased; 4) not concluding that the defendants improperly ceased worker's compensation payments without seeking a modification of the previous judgment of temporary total disability, thus warranting penalties and attorney's fees.

FACTS
On December 19, 1985, while employed as a laborer by Liberty, Fusilier experienced a stinging pain in his back while lifting a 100 lb. sack of rice. After the accident, Fusilier complained of pain on the right side of his lower back and occasional pain and numbness in the legs. Subsequently, Fusilier filed a suit for worker's compensation and was adjudged temporarily totally disabled on May 22, 1987. American began paying Fusilier worker's compensation benefits of $104.68 per week. However, in September 1987, Fusilier's worker's compensation benefits were terminated unilaterally by Liberty and American after a favorable medical examination. On March 30, 1988, Fusilier filed a Supplemental and Amending Petition for Worker's Compensation seeking another finding of disability and penalties and attorney's fees.[1]
Dr. John Cobb, an orthopaedic surgeon, examined Fusilier on August 13, 1986, some eight months after the accident, for complaints of low back pain, leg pain, numbness of the leg and hip pain. An examination revealed no muscle spasm of the back but tenderness at the L-4 level. A straight leg raising test, a neurological exam and x-rays were all normal. Dr. Cobb administered an injection for pain and diagnosed Fusilier's condition as chronic post-traumatic lumbar pain syndrome.
Fusilier was examined again by Dr. Cobb on October 16, 1987, for complaints of low back pain on the left side and pain in the left leg. A straight leg raising test was positive for both legs, but more so on the left side. Dr. Cobb detected no neurological deficits and scheduled an MRI. Fusilier later cancelled the MRI.
On July 20, 1988, Fusilier saw Dr. Cobb with complaints of pain in the right leg. An MRI showed changes at the L5-S1 level which were highly suspect for focal disc herniation. According to Dr. Cobb, this focal disc herniation caused a slight displacement of the S-1 nerve root especially on the left side and a moderate annular bulge at L4-5 but no definite disc herniation.
*1053 Dr. Cobb last examined Fusilier on September 7, 1988, and recommended a discogram before implementing any specific treatment. Dr. Cobb restricted Fusilier to only light and sedentary work.
On cross examination, Dr. Cobb admitted that Fusilier had no loss of function of any extremities and that from a mechanical perspective, Fusilier was able to return to work. Dr. Cobb testified that he found no objective signs of injury and that Fusilier's degree of physical impairment depends on his complaints of pain.
Dr. James McDaniel, another orthopaedic surgeon, examined Fusilier on June 18, 1987. Dr. McDaniel detected no muscle spasm and observed a normal spinal symmetry. A nerve test, a muscle strength test and a reflex test were all normal. A straight leg raising test was normal, but stress tests on the sacroiliac joints produced complaints of pain. Fusilier had no muscle atrophy in either leg, no nerve root damage and no circulation problems. X-rays were normal and Dr. McDaniel opined that, from an orthopaedic standpoint, the movement of Fusilier's complaints of pain from the left leg to the right leg was inconsistent. In his estimation, Fusilier was able to return to work.
After considering the evidence, the trial court concluded that Fusilier was not disabled and granted a judgment in favor of defendants, Liberty and American.
Louisiana courts will pierce through the caption, style, and form of the pleadings to determine from the substance of the pleadings the nature of the proceeding. Succession of Fakier, 541 So.2d 1372 (La. 1988); Lemelle v. City of Opelousas, 540 So.2d 1232 (La.App. 3rd Cir.1989). Every pleading shall be so construed as to do substantial justice. La.C.C.P. art. 865.
In reviewing the record, we observe that Fusilier filed a pleading entitled "SUPPLEMENTAL AND AMENDING PETITION FOR WORKMAN'S COMPENSATION" in his effort to not only enforce the final and definitive May 22, 1987, judgment of temporary total disability, but also to collect penalties and attorney's fees for defendants' unilateral termination of worker's compensation benefits. However, the pre-trial discussion between the respective litigants' counsel and the court reveals that the agreed-upon issue was whether Fusilier continues to be temporarily and totally disabled. In the interests of justice, we will consider both issues although we find the pleading incorrectly captioned and styled.

MODIFICATION OF DISABILITY
Initially, Fusilier contends that the trial court erred in concluding that the defendants proved by a preponderance of the evidence that his condition of disability had ceased.
In seeking a modification of a decree awarding worker's compensation benefits, the defendant employer and insurer must prove by a preponderance of the evidence that the employee's disability has diminished or ceased. Bailey v. Zurich American Ins. Co., 547 So.2d 734 (La.App. 4th Cir.1989), writ denied, 552 So.2d 381 (La.1989); Thompson v. Natchitoches Parish Hospital, Etc., 365 So.2d 57 (La.App. 3rd Cir.1978).
Great weight is afforded the trier of fact and absent an abuse of discretion, the findings of the trial court will not be disturbed. Cormier v. Save-Time, Inc., 497 So.2d 404 (La.App. 3rd Cir.1986).
In the case sub judice, the evidence shows that Fusilier no longer suffers from a disabling condition. Dr. Cobb testified that Fusilier had no objective signs of injury in all of his medical examinations. In the first medical examination, Fusilier had no muscle spasm and several objective tests were negative for any injury. Again, on October 16, 1987, a medical examination revealed abnormal findings only on one subjective test. In the third medical examination, Dr. Cobb interpreted an MRI as showing a focal disc herniation at the L5-S1 level. However, on cross examination, Dr. Cobb conceded that he detected no objective signs of injury which would account for the loss of function of any extremities and that Fusilier was able to return to work.
*1054 Additionally, after examining Fusilier, Dr. McDaniel opined that Fusilier was able to return to work. Dr. McDaniel found no muscle atrophy, no nerve root damage and no circulation problems. Dr. McDaniel detected no objective signs of injury which would support Fusilier's subjective complaints of pain.
Considering the evidence adduced at trial, we cannot say that the trial court was manifestly erroneous in concluding that Fusilier's disability had ceased.

UNILATERAL TERMINATION OF BENEFITS
Fusilier contends that the trial court was manifestly erroneous in not concluding that the defendants improperly terminated his worker's compensation benefits without seeking a modification of the previous judgment of temporary and total disability, thus entitling him to penalties and attorney fees.
Fusilier also contends that the trial court erred in not concluding that he was temporarily and totally disabled when worker's compensation payments were terminated.
The Louisiana Worker's Compensation Act is a compromise of legal rights for the purpose of arriving at a socially desirable result. Theriot v. Damson Drilling Corp., 471 So.2d 757 (La.App. 3rd Cir.1985), writ denied, 472 So.2d 907 (La.1985). Another aim of the worker's compensation law is to provide funds to sustain the injured employee while he cannot provide for himself. Trappey v. Lumbermen's Mutual Casualty Co., 229 La. 632, 86 So.2d 515 (1956).
To enforce the payment of worker's compensation benefits, several statutes provide for the imposition of penalties and/or attorney's fees for delinquent payment or non-payment of benefits. LSA-R.S. 23:1201.2; LSA-R.S. 23:1333.
Relevant to the case sub judice, is LSA-R.S. 23:1201, the law applicable at the time of the injury,[2] which provided in pertinent part:
"F. If any compensation payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty-four percent thereof, which shall be paid at the same time as, and in addition to, such compensation, unless the order is appealed as provided in R.S. 23:1351 or unless such nonpayment results from conditions over which the employer had no control."
Commenting on this particular provision in their treatise on worker's compensation law, Malone and Johnson stated:
"If a dispute proceeds to judgment, a twenty-four percent penalty is imposed on the amount of the judgment if a `final, nonappealable judgment is not paid within thirty days after it becomes due.' Presumably this is simply meant to say that the penalty applies if a final judgment is not paid within thirty days after it becomes final under the ordinary rules of civil procedure. The use of both `final' and `nonappealable' seems to add no additional meaning. There are also exceptions to this penalty: if `the order is appealed' or if non-payment results from conditions over which the employer (but not the insurer) had no control. This is poorly worded, but presumably means that if a judgment is appealed, the time period does not begin to runwhich is simply another way of saying that the judgment is not yet final."
Malone & Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation (2d ed.) Section 389, p. 139.
We interpret this provision to mean that an employer or insurer who does not comply with a final nonappealable judgment within 30 days after benefits are due will be subject to a penalty of 24% of the unpaid compensation benefits unless nonpayment resulted from conditions over which the employer had no control. This penalty stems from the employer's or insurer's failure to comply with a valid court judgment.
*1055 This court and our brethren of the Fourth Circuit have frowned upon an employer's unilateral termination of benefits despite a judgment of disability or an award of benefits by the Office of Worker's Compensation. Buras v. Schwegmann Giant Supermarkets, 538 So.2d 1034 (La.App. 4th Cir.1989), writ denied, 541 So.2d 855 (La.1989); Weatherall v. Duhon's Elec. Service, 490 So.2d 756 (La.App. 3rd Cir.1986).
In the case sub judice, the evidence preponderates that the defendants, Liberty and American, improperly terminated Fusilier's benefits in violation of LSA-R.S. 23:1201 F. The record contains a final and definitive judgment signed May 22, 1987, adjudging Fusilier temporarily and totally disabled and decreeing that "he should be paid benefits from [sic] date of the accident until [sic] date [sic] and be reinstated on his compensation payments." Moreover, in a pre-trial memorandum, Liberty and American admit that Fusilier's benefits were unilaterally terminated in September of 1987 based on the favorable medical examination by Dr. McDaniel. Considering the circumstances, we conclude that the trial court erred in not assessing a penalty against Liberty and American in the amount of 24% of the compensation from the date of the termination of benefits until March 30, 1988, the filing of the supplemental and amending petition for worker's compensation. Since Fusilier was already adjudged temporarily and totally disabled, it was incumbent upon Liberty and American to seek a modification of the binding judgment.
Fusilier also contends that the trial court erred in not awarding attorney's fees.
LSA-R.S. 23:1201.2 provides:
"Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter." (Emphasis added.)
Penal statutes must be strictly construed. Gros v. LeBlanc, 304 So.2d 49 (La.App. 1st Cir.1974). The lower court's decision on attorney's fees is essentially a question of fact and should not be reversed unless clearly wrong. Colomb v. Frito-Lay, Inc., 544 So.2d 710 (La.App. 3rd Cir. 1989).
In the case sub judice, the evidence is abundantly clear that American's termination of benefits were arbitrary, capricious, and without probable cause. Although the medical evidence is in their favor, American simply cannot disregard a valid court judgment of disability and unilaterally terminate benefits. This court would have serious reservations about the efficacy of the Louisiana Worker's Compensation Act if an insurer was allowed to unilaterally terminate an employee's disability benefits in direct contravention of a final and definitive judgment of disability.
In the same vein of reasoning, our brethren of the Fourth Circuit, Judge Ciaccio, wrote in a concurring opinion:

*1056 "[An employer or insurer] must pay benefits as recommended until a modified recommendation provides for termination of benefits or until a judicial decision terminates benefits after either of the parties rejects a recommendation and pursues relief in court. Any other procedure makes meaningless the administrative, informal dispute resolution scheme established by the Legislature for resolving disputes concerning claims for worker's compensation. The system will not work if an accepted recommendation which says that benefits are due can be interpreted unilaterally by the employer to mean that benefits need not be paid, requiring the employee to go to court to enforce the recommendation."
Buras, supra at 1036.
Therefore, we conclude that the trial court erred and we award $5,000 in attorney's fees to Fusilier.
Fusilier also contends that the trial court erred in not concluding that he was entitled to rehabilitation services.
LSA-R.S. 23:1226 mandates rehabilitation training for employees whose injuries prevent them from earning wages equal to wages earned prior to the injury.
In the case sub judice, Fusilier offers no evidence which would support an award for rehabilitative services. Both Drs. Cobb and McDaniel opined that Fusilier is able to return to his former employment. In addition, on cross-examination Fusilier admitted that since the last trial, neither physician has instructed him to not return to work.
Considering the evidence adduced at trial, we cannot say that the trial court was manifestly erroneous.
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part and rendered as follows: IT IS ORDERED, ADJUDGED AND DECREED that appellees, Liberty Rice Mill and American Mutual Liability Insurance Company, pay unto appellant, Paul Fusilier, worker's compensation benefits in the amount of $104.68 per week from the date of termination of benefits in September of 1987 to March 30, 1988, the filing date of the Supplemental and Amending Petition for Worker's Compensation, together with statutory penalties of 24%. On those past due installments due prior to the date of judicial demand, legal interest will accrue from the date of judicial demand until paid. On those past due installments due after judicial demand, interest will accrue from the due date of each installment until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that appellee, American Mutual Liability Insurance Company, pay unto appellant, Paul Fusilier, attorney's fees in the sum of $5,000.
In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally between appellees and appellant.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] An examination of the record reveals that the only evidence introduced at trial was the earlier judgment of temporary total disability, depositions from two physicians, and testimony from Fusilier.
[2] The applicable statute is the one in effect at the time of the injury, i.e., December, 1985. Williams v. State, 489 So.2d 461 (La.App. 3rd Cir.1986).