703 So.2d 756 (1997)
Joseph G. ALBE
v.
Joseph G. ALBE.
No. 97-CA-1042.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 1997.
Writ Denied February 13, 1998.
*757 Leslie Megin Koch, Baton Rouge, for Appellants Joseph G. Albe and Louisiana Workers' Compensation Corporation.
Robert A. Lenter, Workers' Compensation Legal Clinic, Metairie, for Appellee Joseph G. Albe.
Before KLEES, WALTZER and MURRAY, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Joseph G. Albe, a self-employed attorney, on 17 June 1996 filed a Disputed Claim for Compensation against himself, as employer, and his Workers' Compensation Insurer, Louisiana Workers' Compensation Corporation (LWCC), claiming maximum benefits, penalties and attorneys' fees for injuries arising out of work-induced bilateral carpal tunnel syndrome. Following a hearing, the Office of Workers' Compensation Hearing Officer rendered judgment on 27 January 1997 finding that Albe suffered a disabling work related accident which resulted in bilateral carpal tunnel syndrome which required him to undergo surgical repair to his left wrist and hand causing a 2.5 × 1/8 × 1/16 inch scar to his left hand which is serious and permanent in nature, and finding that LWCC delayed without just or probable cause for over sixty days in paying a $31.00 medical bill submitted by Albe. The Hearing Officer awarded Albe fifteen weeks of compensation at the maximum weekly rate for the serious and permanent scarring. The trial court imposed $2,000 in penalties and $1,500 in attorney's fees based on a finding that LWCC acted in an arbitrary and capricious manner in delaying payment of the $31 Group bill and mileage reimbursement.
LWCC appealed from the award of penalties and attorney's fees, and Albe answered the appeal, seeking an award of attorney's fees incurred in the defense of the appeal.

STATEMENT OF FACTS
Albe testified that he has been an attorney practicing in the field of Workers' Compensation for about ten years. He sustained an injury to his hand on 6 September 1995 caused by repetitive use of computers and driving in the course and scope of his professional activities. Albe saw Dr. Robert E. Ruel and ultimately underwent surgery to his left hand to correct diagnosed carpal tunnel syndrome. As a result of the surgery, he was left with a scar of between two and three inches which causes residual pain, sensitivity and discomfort. Albe spoke to a micro-surgeon who advised of an alternate *758 surgical procedure that could have achieved a better result.
Albe testified that he lost two or three days from work. LWCC sent him a compensation check for less than seven days, which he returned. Albe incurred a $31.00 bill on 4 January 1996 from the New Orleans Radiology Group (the Group) and submitted this bill together with a request for mileage and medication reimbursement to LWCC by letter dated 13 February 1996, which LWCC received and date-stamped on 15 February 1996. He testified that LWCC reimbursed the medication expense slightly more than thirty days after submission. Albe testified that he sent LWCC a follow-up letter on 11 March 1996; however, the copy submitted does not bear the LWCC date stamp. Albe requested payment of the $31.00 bill and penalties under La. R.S. 23:1201(G) by letter dated 6 May 1996 which is stamped received by LWCC on 10 May 1996. According to LWCC's reply letter of 28 May 1996, the Group's bill for $31 was returned to the Group on 14 March 1996 requesting the correct billing form. LWCC advised Albe that it had asked that the Group bill LWCC directly to expedite the payment process, and advised Albe that the $31 bill had been processed on 20 May 1996. By the same letter, LWCC advised Albe that his request for mileage reimbursement was incomplete, and lacked both his name and claim number; however, LWCC took the copy of his original form, received on 10 May 1996, and processed it. LWCC asked Albe to let it know if he did not receive the payment within the next ten working days.
Sean Daigre, the LWCC adjustor who handled Albe's claim, testified that Albe's claim file had been closed prior to the original request for surgical treatment of the carpal tunnel syndrome. When LWCC was advised of the need for surgery, the file was reopened and assigned to Daigre. Daigre testified to LWCC's procedure for processing claim-related correspondence. When correspondence is received it is divided, and the billing goes to the "Bill Paid" Department. If that department has a question or problem, the bill is sent to the claims adjuster, in this case, Daigre. Because of a clerical error, Daigre did not receive Albe's bill in accordance with normal experience, within two weeks. He testified that his first knowledge of the claim for the $31 Group bill occurred some time after 11 March, when he received Albe's letter of that date. He began to check and found that the billing statement that the Bill Paid Department had received had triggered erroneously a request to the Group for an HCFA form. By the time he received Albe's letter of 6 May 1996, the Bill Paid Department had already begun to process the payment of the Group's bill.
Daigre testified that since Albe's original mileage reimbursement request was incomplete and did not bear either Albe's name or the claim number, it could not be identified, and had probably been placed in a "dead bin" among LWCC's records. When he received a copy from Albe, Daigre filled out the missing information and placed the request in line for payment, and payment was made within thirty days.

STANDARD OF REVIEW
The award of penalties and attorney's fees in a workers' compensation case is based on a finding of fact and should not be disturbed unless it is clearly wrong. Lemoine v. Schwegmann Giant Supermarkets, Inc., 607 So.2d 708, 713 (La.App. 4 Cir.), writ denied, 609 So.2d 258 (La.1992). Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts[1], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745.
FIRST ASSIGNMENT OF ERROR: The hearing officer erred in awarding penalties and attorney's fees, as defendants acted reasonably.
Failure to provide payment within sixty days after receipt of written notice *759 subjects LWCC to assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which the claim remains unpaid, up to a maximum penalty of $2,000, together with reasonable attorney's fees for each disputed claim. La.R.S. 23:1201 E; La.R.S. 23:1201 F(1). Penalties and attorney's fees shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. La.R.S. 23:1201 F(2). The jurisprudence uniformly dictates that these penalty provisions are penal in nature and should be strictly construed. See, for example, Augustus v. St. Mary Parish School Bd., 95 2498 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144; Stevens v. Wal-Mart Stores, Inc., 27,977 (La. App. 2 Cir. 11/1/95), 663 So.2d 543; Ferrier v. Jordache-Ditto's, 94-1317, 94-1318 (La. App. 3 Cir. 5/17/95), 662 So.2d 14, writ denied, 95-2865 (La.2/2/96), 666 So.2d 1100; Ball v. Dawsey Corp., 95-669 (La.App. 5 Cir. 11/28/95), 665 So.2d 566. The purpose of the penalty provision is to combat indifference to injured workers by employers and their insurers. Ramsey v. Cash and Carry Foods, Inc., 95-544 (La.App. 3 Cir. 11/2/95), 664 So.2d 511. Likewise, awards of attorney's fees are not designed to make a party whole, but rather to discourage a particular activity or activities on the part of the other party. Such awards will depend in part on the degree of the opposing party's culpability or bad faith. See, Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382, 1387.
Albe claims penalties with respect to two items: his mileage reimbursement request and the Group bill. The evidence is uncontroverted that the mileage reimbursement request Albe filed was incomplete, and did not bear either his name or claim number. The evidence is also uncontroverted that when the matter was brought to Daigre's attention, Daigre himself corrected the deficiency in the form and immediately processed reimbursement. We reject as unsupported by any evidence of record Albe's argument that LWCC's claims practice was grossly negligent and improper. We find no basis for imposition of statutory penalties with respect to Albe's mileage reimbursement.
The evidence is uncontroverted that an error occurred when LWCC's Bill Paid department received Albe's original request for payment of the Group bill and triggered a request for a claim form. When the adjuster became aware of the problem on receipt of Albe's letter in mid-March, the evidence is uncontroverted that he made a diligent effort to pursue the issue, leading to direct billing by the Group to LWCC. The investigation was further complicated by Albe's own failure to put his name and claim number on the mileage reimbursement request.
We are mindful of the deference to be given to the trial court's determination of the propriety and amount of statutory penalties arising out of the delay in reimbursing Albe the $31 Group bill; however, where there is no evidence supporting the award it must be reversed. We have reviewed the record and transcript and find no evidence that LWCC acted in an arbitrary or capricious manner in its handling of this claim. The admitted error that triggered LWCC's request for an additional claim form as a matter of law does not rise to the level of indifference the statutory penalty is designed to remedy. See, Harrison v. Louisiana State University Medical Center, 623 So.2d 707, 709 (La.App. 4 Cir.1993), recognizing the principle that simple errors or miscalculations are not usually considered arbitrary or capricious.
In the trial court's oral reasons for judgment, the hearing officer concluded:
I understand that the bill is a very small amount but there is a penalty statute and it has to be strictly construde [sic] not liberaly [sic] construde [sic] ...
Strict construction of a penal statute requires that it be interpreted AGAINST imposition of penalty and it appears that the hearing officer's interpretation of strict construction is just the opposite. Imposition of the statutory penalty and attorney's fees in this case, which arises out of simple error and lapse in communication by both LWCC and Albe, does not advance the statutory purpose of discouraging employer/insurer indifference *760 and is inappropriate under the totality of circumstances.
Having found no basis for imposition of statutory penalties and attorney's fees below, we deny Albe's petition for attorney's fees on this appeal.
SECOND AND THIRD ASSIGNMENTS OF ERROR: The $2,000 penalty and $1,500 attorney's fee awarded by the hearing officer were excessive.
In light of our disposition of the first assignment of error, these assignments are moot.

CONCLUSION
The record fails to provide evidentiary support for a finding that statutory penalties and attorney's fees should be awarded and the hearing officer incorrectly applied the legal rule of strict construction of penalty statutes. Under the Ambrose standard, we find that the hearing officer's judgment imposing penalties of $2,000 and attorney's fees of $1,500 is manifestly erroneous and clearly wrong as a matter of fact and law and is reversed. Albe's petition for attorney's fees on appeal is denied.
JUDGMENT FOR PENALTY AND ATTORNEY'S FEE REVERSED.
MURRAY, J., dissents, and assigns reasons.
MURRAY, Judge, dissenting.
Although I agree with the majority that the delay in reimbursement of mileage was caused by Mr. Albe's own negligence, I respectfully dissent from the reversal of the award of penalties and attorney's fees based on the delay in payment of the $31.00 medical bill.
The majority proposes that the mishandling of the Group medical bill by LWCC "does not rise to the level of indifference the statutory penalty is designed to remedy," and cites Harrison v. Louisiana State Univ. Med. Ctr., 623 So.2d 707, 709 (La.App. 4 Cir.1993), for the proposition that "simple errors or miscalculations are not usually considered arbitrary or capricious."
In Harrison the defendant attempted to excuse its failure to timely pay compensation by explaining that the delay was caused by the fact that such checks were issued by a Baton Rouge office, that it had moved its New Orleans office, and that the post office did not promptly forward its mail. It argued, therefore, that the non-payment resulted from conditions over which it had no control so as to preclude the award of penalties and attorney's fees. In rejecting that argument, this Court held that a "defendant cannot urge its own poor clerical work to escape penalties for nonpayment." Harrison, supra; Brown v. Manville Forest Products Corp., 565 So.2d 496 (La.App. 2 Cir. 1990).
LWCC alleges that the delay in paying the Group medical bill was caused by its own internal clerical system for processing such claims. Mr. Daigre testified that because of an LWCC clerical error, he did not receive the bill timely. Additional delay in processing the claim was caused when the LWCC billing department erroneously requested a different type of claim form from the Group. While it is admirable that Mr. Daigre worked diligently to clear up the problem, that does not negate the fact that LWCC was delinquent in processing this claim, and that delinquency was caused by conditions entirely within its control.
Thus, based on my reading of the record and this Court's opinion in Harrison, I do not find that the hearing officer erred in assessing statutory penalties and attorney's fees relating to the late payment of the Group bill.
NOTES
[1] See, LSA-Const. Art. 5, section 10(B).